**LAW OFFICES OF NOLAN KLEIN, P.A.**　　　　　　　　　　ATTORNEYS & COUNSELORS

**5550 GLADES ROAD, SUITE 500**
**BOCA RATON, FL 33431**
**PH: (954) 745-0588**

www.nklegal.com　　　　　　　　　　　　　　　　　　　　　Nolan Klein, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　　　　klein@nklegal.com

April 4, 2024

*Via ECF*

Hon. Vera M. Scanlon
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

　　　　　　Re:　*Vasquez v. S.K.H. Trading Co., Inc. et al.*
　　　　　　　　*No. 23-cv-4036(ENV)(VMS)*

Your Honor:

　　　We represent the Plaintiff Adan Vasquez (Vasquez) and opt-in Plaintiff Ricardo Flores (Flores), along with Erik Bashian, Esq., and the law firm of Bashian & Papantoniou, P.C., but write on behalf of all parties on consent, to respectfully request approval of the parties' settlement of this matter pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). We attach a copy of the parties' Amended Settlement Agreement and Release (the Settlement) as Exhibit A. If approved, the Settlement will fully and finally resolve Plaintiffs' claims in this matter.

　　　As detailed below, the Settlement is reasonable under each of the five *Wolinsky* factors (*see Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

　　　**I.　PROCEDURAL AND FACTUAL HISTORY**

　　　On May 21, 2023, Vasquez filed a Summons and Complaint (Compl.) alleging violations of the Fair Labor Standards Act of 1938 (FLSA) and New York Labor Law (NYLL) with respect to his former employment. (Docket Entry (DE) 1.) Vasquez sought to bring his FLSA claims as a collective action on behalf of himself and all similarly situated individuals pursuant to 29 U.S.C. § 216(b), and sought to bring his NYLL claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

　　　On June 6, 2023, Flores filed his written consent to join the FLSA collective action pursuant to 29 U.S.C. § 216(b). (DE 9.)

　　　Vasquez worked as a food distribution delivery driver for Defendant S.K.H. Trading Co., Inc. d/b/a Wonder Foods (Wonder Foods) from approximately January 2012 to January 2023.

Hon. Vera M. Scanlon
Page 2

(Compl. at ¶¶ 14-15.)[1] Vasquez regularly handled goods in interstate commerce, including delivering food products to Wonder Foods's customers. (*Id.* at ¶¶ 15-16.) Vasquez's duties did not require the exercise of discretion or independent judgment. (*Id.* at ¶ 17.)

From January 2012 until March 2020, Vasquez allegedly worked five days per week with a start time at approximately 5:00 a.m. and an end time between approximately 4:00 p.m. and 6:00 p.m., for an alleged total of approximately 55-65 hours per week. (*Id.* at ¶ 18.)

From March 2020 until January 2023, Vasquez allegedly worked four days per week with a start time at approximately 5:00 a.m. and an end time between approximately 4:00 p.m. and 6:00 p.m., for an alleged total of approximately 44-52 hours per week. (*Id.* at ¶ 19.)

Vasquez was paid at the rate of $15.00 per hour for each hour worked, without any raises during the term of his employment. (*Id.* at ¶ 20.) Vasquez alleged that Defendants failed to pay Plaintiff for time worked over 25 hours, and some instances for time worked above 15 hours, in any given week, even though Plaintiff worked over 40 hours a week, and failed to pay Vasquez any overtime premium rate for hours worked over forty in a workweek. (*Id.* at ¶¶ 24, 22.)

Through the discussions that followed the Complaint, it was agreed that Flores worked as a Driver's Helper and, throughout much of employment, worked on the same truck, for allegedly the same hours, as Vasquez.

Accordingly, Plaintiffs asserted claims pursuant to the overtime provisions of the FLSA, 29 U.S.C. § 207(a)(1). (Compl. at ¶¶ 41-44.) Although not relevant to the instant motion, Plaintiffs also asserted claims under the NYLL for failure to pay overtime pay (Compl. at ¶¶ 45-48), failure to pay earned wages (Compl. at ¶¶ 49-54), an alleged violation of the Spread of Hours provisions of the NYLL and interpreting regulations (Compl. at ¶¶ 55-58), alleged violations of the notice and recordkeeping requirements of the NYLL (Compl. at ¶¶ 59-60), and alleged violations of the wage statement provisions of the NYLL (Compl. at ¶¶ 61-63).

On June 14, 2023, Defendants appeared by counsel (DE 10) and waived service of the summons and complaint (DE 12-13). With the permission of the Court, the Defendants' time to answer or otherwise move with respect to the Complaint was extended several times. (DE 14, 15, 16.) Throughout this time, the parties engaged in various conferences and exchanged correspondence regarding the legal and factual issues raised by the Complaint, with an eye toward settlement of the matter.

In particular, on July 12, 2023, counsel for the Defendants sent correspondence to Plaintiffs' counsel signaling Defendants' intention to move to dismiss the FLSA cause of action on the ground that Plaintiffs were exempt from the overtime requirements of the FLSA. Defendants asserted that Plaintiffs were exempt employees for purposes of the overtime provisions of the FLSA pursuant to 29 U.S.C. § 213(b)(1) and, based upon the allegations contained in the Complaint supplemented by additional evidence, they would move for dismissal

---

[1] For purposes of settlement, the Defendants do not dispute the allegations set forth in the Complaint except where specifically stated, as will be apparent in the text.

Hon. Vera M. Scanlon
Page 3

or judgment on the pleadings with respect to the sole claim under the FLSA. Defendants asserted that "[t]he exemption is applicable to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935." 29 C.F.R. § 782.1. Defendants alleged that:

> [t]he exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(2) (citing *Pyramid Motor Freight Corp.* v. *Ispass,* 330 U.S. 695; *Levinson* v. *Spector Motor Service,* 330 U.S. 649; *Morris* v. *McComb,* 332 U.S. 442.)

Defendants presented credible assertions that Plaintiffs delivered food and products throughout the five boroughs of New York City, utilizing the interstate highway system, in a truck greater than 10,000 pounds Gross Vehicular Weight. Defendants alleged that "[t]ransportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a "practical continuity of movement" across State lines from the point of origin to the point of destination." *Id.* 29 C.F.R. § 782.7(b)(1). Defendants alleged that "[t]he result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of both acts; the fact that other carriers transport it out of or into the State is not material." *Id.*

There is no dispute that "[a] 'driver,' as defined for Motor Carrier Act jurisdiction (49 CFR parts 390–395; Ex parte No. MC–2, 3 M.C.C. 665; Ex parte No. MC–3, 23 M.C.C.1; Ex parte No. MC–4, 1 M.C.C. 1), is an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce."

There is no dispute that "[a] Driver's 'helper,' as defined for Motor Carrier Act jurisdiction (Ex Parte Nos. MC-2 and MC-3, 28 M.C.C. 125, 135, 136, 138, 139), is an employee other than a driver, who is required to ride on a motor vehicle when it is being operated in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.4(a).

Thus, Defendants asserted that, as a driver and a driver's helper engaged in interstate commerce, Plaintiffs were exempt from the overtime requirements of the FLSA pursuant to 29 U.S.C. § 213(b)(1).

After receiving Defendants' correspondence and discussing the matter with the Plaintiffs, we had various telephone conferences with counsel for the Defendants regarding this issue. Those calls led to settlement discussions, centered upon the fact that Plaintiffs may not have a viable FLSA claim and that it was entirely possible that this Court would dismiss that claim, but

Hon. Vera M. Scanlon
Page 4

Plaintiffs certainly have the same claims to overtime and other alleged unpaid wages under the NYLL. Thus, we indicated that we would simply refile the NYLL claims in state court should this Court be inclined to dismiss the FLSA claims. Defendants' counsel acknowledged as much.

In the same July 12, 2023, correspondence, however, Defendants also asserted that Vasquez's allegation of working 55-65 hours per week was without merit. Defendants asserted that, as a driver, Vasquez arrived to the delivery center at approximately 8:00 a.m. to 8:30 a.m. every morning, complete his route for the day, and arrive back at the delivery center between 1:00 p.m. and 1:30 p.m., depending on the length of his route and traffic conditions. Defendants alleged that Vasquez worked five days per week before the COVID pandemic, and four days per week after the COVID pandemic (as acknowledged in the Complaint). Defendants alleged that Vasquez worked, on average, 25 hours per week until January 2017, 21 hours per week until January 2019, and 18 hours per week thereafter. Defendants alleged that all other drivers worked similar hours of anywhere between 15 to 30 hours per week depending on their routes.

Defendants also alleged that Plaintiffs would often have numerous instances of call-outs and sick days, thus lowering the hours in certain weeks even further. Additionally, Defendants alleged that Vasquez would exit the country for extended periods of time to visit with family, yet there were no allegations of the lack of such working time in the Complaint. Additionally, Defendants alleged that Vasquez worked a second job at Los Primos Meat Market in the afternoon after he left Defendants' delivery center, which would be backed up by the records obtained from his second employer showing when he arrived there, thus defeating any allegation that he remained working with Defendants beyond 1:30 p.m., and certainly not until 6:00 p.m. as alleged by Vasquez.

While Plaintiffs did not concede on any of these issues regarding hours worked, based upon Defendants assertions, it was clear that there was a bona fide dispute regarding the factual assertions contained in the Complaint regardless of whether the claim fell under the FLSA or NYLL, and that there was a likelihood that Plaintiffs were exempt for purposes of the FLSA such that the Court may dismiss those claims. Thus, settlement discussions began in order to potentially avoid the need for engaging in motion practice in this Court or the refiling of the NYLL claims in state court.

In furtherance of those settlement discussions, the parties had numerous telephonic conferences to discuss the merits of each party's assertions, exchanged payroll documents for the Plaintiffs, discussed potential witness testimony from Defendants' other employees (Plaintiffs' coworkers) who would dispute the alleged hours of work of Plaintiffs, discussed the potential of subpoenas to Vasquez's alleged second employer and the EZ Pass system (as he commuted to and from work from Connecticut, thus leading to a record of his travels for the purpose of recreating an approximation of his time worked[2]), and exchanged various settlement demands and offers.

After months of negotiations, the parties were able to resolve Plaintiffs' claims for a total sum of $22,000.00 on the terms set forth in the Agreement now before the Court. (Ex. A.)

---

[2] It was undisputed by Defendants that they did not maintain a record of the time worked by Plaintiffs.

**II.     THE SETTLEMENT IS FAIR, REASONABLE,
         AND CONSISTENT WITH *CHEEKS***

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances including, but not limited to, examining the five so-called *Wolinsky* factors: (1) Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable te parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the produce of arm's length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks*--specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *See Flood v. Carlson Rests, Inc.*, No. 14 Civ. 2740, 2015 WL 4111668, at 2 (S.D.N.Y. July 6, 2015). This Settlement satisfies the five *Wolinsky* factors and does not conflict with the *Cheeks* admonitions.

**A.     Plaintiff Will Receive a Significant Portion of Their
        Maximum Possible Recovery Under the Settlement**

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable as it provides Plaintiffs with a significant portion of the maximum possible recovery that they would obtain if they litigated this matter through summary judgment and/or trial, whether in this Court or in state court. Where all facts are viewed in the light most favorable to Plaintiffs and all alleged facts proven to be true, and no exeptions applicable, Mr. Vasquez would be entitled under the FLSA to approximately $59,940.00 constituting his unpaid wages and overtime in the three year period preceding the filing of this case.[3]

However, the FLSA does not support a claim for "gap time" pay (the alleged hours of work between what Plaintiffs were paid and 40 hours). *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013). That claim can only be raised under the NYLL and amounts to a significant portion of their total damages stated above (approximately $33,300.00). Nor does the FLSA provide for spread of hours pay or statutory damages for alleged violations of the notice and wage statement provisions of the NYLL. Thus Plaintiffs' alleged maximum possible recovery under the FLSA overtime provisions alone would be approximately $26,640. Plaintiffs' receipt of $11,000.00 each under the Settlement amounts to 41% of their maximum possible (heavily disputed) recovery under the FLSA for Mr. Vasquez, and is completely attributable to NYLL claims for Mr. Flores.

Moreover, should the Court have ultimately agreed that Plaintiffs were exempt from the overtime requirements of the FLSA, then Plaintiffs would be entitled to nothing under the FLSA at all.

---

[3] Mr. Flores would not have FLSA claims during the three year period proceeding this case. His NYLL claims for the period of 2017-2020 – as alleged and heavily disputed – would be more than approximately $21,450.00 and Mr. Vasquez's NYLL claims – as alleged and heavily disputed – would be more than $96.525.00.

Hon. Vera M. Scanlon
Page 6

Thus, their recovery under the Settlement reflects a reasonable compromise and meets or exceeds recovery percentages recently approved in other wage-and-hour settlements within this circuit and geographic area. *See Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness); *Siddiky v. Union Sq. Hosp. Group, LLC*, No. 15 Civ. 9705, 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (approving 23% recovery of plaintiffs' maximum possible recovery); *Griffin v. Aldi, Inc.* No. 16 Civ. 00354, ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (approval of 28% of maximum damages); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094, 2014 WL 4670870, at *7 (S.D.N.Y. Sept. 19, 2014) (approving FLSA class settlement of 20-25% of maximum recovery).

      **B.**      **By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of continued discovery, motion practice, and the risk of a lengthy and expensive trial. Courts have repeatedly recognized that cases where plaintiffs must prove their hours of work in the face of conflicting evidence from the Defendants are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g., Riedel v. Acqua Ancient Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risks of proving damages in an off-the-clock claim); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233, 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]"). Here, the burden will be especially great because the parties maintain drastically different assessments of whether and for how many hours Plaintiffs worked for Defendants, even assuming the Plaintiffs first prove they are non-exempt under the FLSA, a litigation hurdle that must first be overcome.

Indeed, further litigation would result in additional expense, including formal discovery, the cost of depositions, motion practice resulting from the exemption issue as well as collective or class action certification, followed by a summary judgment motion or motion to decertify any class, trial preparation and trial. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. mamma Lombardi's of Holbrook, Inc.* 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420-21 (S.D.N.Y. 2014) (finding, in an FLSA actin, that the "fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive.").

Given the fact-intensive analysis of the issues in dispute, Plaintiffs submit that this case will, if not dismissed on the exemption issue, proceed to trial, at a minimum, on the issue of how many hours Plaintiffs worked. Because both parties would face significant expense and risk by continuing to litigate, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated in *Wolinsky*.

      **C.**      **The Settlement is the Product of Arm's Length Bargaining Between Experienced Counsel and There is No Possibility of Fraud or Collusion**

The fourth and fifth factors -- whether the Settlement is the product of an arm's length bargaining process and the possibility of fraud or collusion -- also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in wage-and-hour and employment disputes, and Plaintiffs' counsel has extensive experience representing employees in wage-and-hour litigations. My firm, as well as Mr. Bashian and his firm, have represented clients in hundred of FLSA matters. Ultimately, the parties have worked diligently to advance their clients' positions and negotiate a fair resolution.

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims unrelated to their claims for unpaid wages. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337041 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 Civ. 1012, 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement).

Critically, this Settlement does not contain any terms that would militate against the Court approving it. For example, the Settlement does not contain a confidentiality provision beyond requiring Plaintiffs, themselves, to keep the monetary amount of the settlement confidential (Ex. A), but nevertheless the Settlement agreement is being filed publicly, as is this motion, including the monetary amount of the settlement. Under the limited confidentiality provision, Plaintiffs are free to discuss their claims, Defendants' defenses, and the negotiation process itself with anyone. (Ex. A.)

Likewise, the Settlement contains a release limited to wage and hour claims during the time Plaintiffs worked for Defendants. (Ex. A.) This release is specifically tailored and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness.

In sum, this Settlement provides for a significant portion of Plaintiffs' possible recovery, mitigates significant risks and costs of litigation, is the product of arm's length bargaining

Hon. Vera M. Scanlon
Page 8

amongst experienced counsel, does not contain an overly broad confidentiality provisions, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, and represents a compromise of bona fide disputes. As such, the Court should approve the Settlement.

### III.    PLAINTIFF'S PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Plaintiff's attorney's fees in FLSA matters may be calculated as either (a) a percentage of recovery or (b) as the product of a reasonable hourly rate and the reasonable number of hours expended (the loadstar method). *Flores v. Food Express Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351 at *6-7 (E.D.N.Y. 2016) *citing McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). As to the percentage of recovery method, "[i]n this Circuit, courts typically approve attorney's fees that range between 30 and 33[percent]." *Thornhill v. CVS Pharm., Inc.*, 2014 U.S. Dist. LEXIS 37007, *3 (S.D.N.Y. 2014); *Briggs v. DPV Transp., Inc.*, 2021 U.S. Dist. LEXIS 245830, *5 (S.D.N.Y. 2021)("Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery"); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. 2013)(same). Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $7,333.33, which amounts to 33% of the gross settlement amount.

### IV.    CONCLUSION

Accordingly, the parties jointly request that the Court approve the Settlement, So Order the proposed Stipulation of Dismissal with prejudice simultaneously filed herewith, and have it entered on the docket by the Clerk of the Court.

We thank Your Honor for the Court's time and consideration.

                                                      Respectfully submitted,

                                                      */s/ Nolan Klein*
                                                      Nolan Klein

                                                      */s/ Erik Bashian*
                                                      Erik Bashian